IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HEATHER LEACH, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-01426-OLG |
| | § | |
| vs. | § | |
| | § | |
| H.E.B., | § | |
| | § | |
| *Defendant.* | § | |

# ORDER

Before the Court in the above-styled cause of action is Defendant's Motion to Compel Arbitration [#5].  By its motion, Defendant asks the Court to compel the parties to arbitrate their dispute pursuant to an arbitration agreement executed by Plaintiff at the outset of her employment.  Plaintiff, who is proceeding *pro se*, and counsel for Defendant appeared before the Court at an initial pretrial conference on January 10, 2024, at which the Court heard argument on Defendant's motion.  For the reasons that follow, the Court will grant the motion to compel arbitration, stay this case pending the issuance of a final arbitral award, order Defendant to provide Plaintiff with a copy of the governing rules for the arbitration, and order Defendant to file quarterly status updates as to the arbitration's progress.

## I.  Background

By this action, Plaintiff Heather Leach claims that her employer, Defendant H.E.B., discriminated against her based on her race and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 when it subjected her to multiple adverse employment actions rather than address her complaints of discrimination.  H.E.B. contends that Leach agreed to arbitrate all

1

claims related to her employment when she signed an arbitration agreement as part of her application for employment executed on October 27, 2019. H.E.B. further claims that Leach signed a second arbitration agreement regarding employment-related claims on June 4, 2021, as part of her training as an existing employee. H.E.B. has provided the Court with both arbitration agreements as well as the affidavits of Christopher Shaver, a Human Resources Technology Advisor for H.E.B, and Michael Flores, a Learning Technology Manager II for H.E.B., in support of its motion.

According to the sworn testimony of Mr. Shaver, since 2015, any candidate who is interested in working at H.E.B., including the store where Leach worked in San Antonio, Texas, must complete and submit an electronic employment application. (Shaver Aff. [#5-1], at ¶ 3.) The first page of the electronic application contains an Agreement to Arbitrate. (*Id.*) This Agreement to Arbitrate provides that H.E.B. and the applicant "mutually agree that any controversy or claim arising out of or relating to" the application, hiring process, employment and benefits (if hired), separation of employment and/or job injury or illness "shall be submitted to and resolved exclusively by final and binding arbitration under the Federal Arbitration Act to be administered by the American Arbitration Association (AAA) or other mutually agreed arbitrator . . . ." (Arbitration Agreement [#5-1], at 18–19.) The record reflects that Leach submitted H.E.B.'s electronic employment application and electronically signed the application on October 27, 2019, in connection with her job application for the position of Part-time Food Demo Representative, and specifically agreed to the "Agreement to Arbitrate" and "E-Signature Disclosures and Consent agreement" provisions of the application. (Shaver Aff. [#5-1], at ¶¶ 4, 8; Job Application [#5-1], at 6–15.)

Furthermore, Mr. Flores states in his affidavit that all H.E.B. employees must complete periodic training as a condition of employment. (Flores Aff. [#5-2], at ¶ 3.) As of October 1, 2019, all H.E.B. partners were required to complete a training course specifically regarding H.E.B.'s work injury benefit plan ("WIBF") and arbitration agreement. (*Id.* at ¶ 5.) The record reflects that Leach completed and consented to the training on June 4, 2021. (*Id.* at ¶ 10; Training Transcript [#5-2], at 6, Certificate of Completion [#5-2], at 11.) According to the sworn testimony of Mr. Flores, Leach could not have completed the training without receiving notice of the WIBF Arbitration Agreement and acknowledging receipt of that agreement. (Flores Aff. [#5-2], at ¶ 9.) The WIBF Arbitration Agreement provides that Partners (employees) and H.E.B. "mutually agree that any controversy, claim or dispute between the parties, including any claim arising out of or relating to a Partner's application, the hiring process, employment, separation of employment and/or any occupational or on-the-job injury/illness death" shall be "submitted to and resolved exclusively by final and binding arbitration under the Federal Arbitration Act to be administered by the American Arbitration Association (AAA) or other mutually agreed arbitrator . . . ." (WIBF Arbitration Agreement [#5-2], at 13.)

H.E.B. asks the Court to enforce these arbitration agreements, order Leach to arbitrate her claims, and either dismiss or stay this case pending the outcome of the arbitration. In addition to addressing her motion at the Court's initial pretrial conference, Leach has filed a *pro se* written response to H.E.B.'s motion [#9]. In her response, Leach argues that she did not actually sign any of the documents or agreements at issue, electronic or otherwise, and she therefore cannot be bound to arbitrate her claims. The motion is ripe for the Court's resolution.

3

## II.  Legal Standard

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim.  "The first is contract formation—whether the parties entered into *any arbitration agreement at all*.  The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).  In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court.  *Id.*  However, where the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S.---, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015).  Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate.  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

## III.  Analysis

The Court finds that H.E.B. has met its burden to establish that Leach entered into a binding agreement to arbitrate all employment-related disputes with H.E.B. when she applied for

employment on October 27, 2019, and when she completed the WIBP training on June 4, 2021, and that the claims asserted in this suit fall within the scope of the agreements. Leach has not presented evidence that refutes H.E.B.'s evidence establishing that she entered a binding arbitration agreement or otherwise demonstrates her agreement with H.E.B. is unenforceable.

Under the FAA, courts apply ordinary state law contract principles to determine the validity of an arbitration agreement. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987). In Texas, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d. 161, 162 (2006) (citations omitted). Additionally, under Texas law, a valid contract exists if—in addition to an offer and acceptance—there is a meeting of the minds, each party consents to the terms, and there is a manifestation of an intention to be bound by the agreement. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). Moreover, like other contracts, an agreement to arbitrate must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam). The arbitration agreements at issue satisfy all of these contractual requirements.

The record establishes that an employee like Leach is unable to begin employment at H.E.B. unless she is able to login to the H.E.B. online job application system using an account created by the applicant with a unique username and password. (Shaver Aff. [#5-1], at ¶ 6.) Furthermore, a candidate cannot proceed through the application unless they use their own unique credentials and cannot submit an electronic application for employment without first opening and reviewing the acknowledgments and agreements, including the Agreement to

5

Arbitrate. (*Id.* at ¶¶ 6–8.) Finally, the record reflects that a candidate electronically signs documents by entering unique credentials and completing the "E-Signature Disclosures and Consent agreement" provisions of the employment application. (*Id.* at ¶ 8.)

As to the second arbitration agreement, the record establishes that Leach was required to use her unique credentials to login to a training dashboard where she was directed to watch a training video, which provided notice of the arbitration agreement. (Flores Aff. [#5-2], at ¶ 8.) Leach could not proceed or complete the training without reviewing and acknowledging her assent to the arbitration agreement. (*Id.*) The record reflects that Leach completed the WIBP training, which required her notice, acknowledgment, and agreement to the WIBP Arbitration Agreement and received a Certificate of Completion after completing the training. (*Id.* at ¶ 9.)

The fact that Leach electronically signed her employment application and electronically completed the WIBP training is not a valid defense to contract formation. Texas has adopted the Uniform Electronic Transactions Act, which provides, in part, that electronic signatures may be used in contract formation. Tex. Bus. & Com. Code § 322.009(a); *see also Alorica v. Tovar*, 569 S.W.3d 736, 740 (Tex. App.—El Paso 2018, no pet.) ("A signature, electronic or otherwise, is generally deemed to be sufficient to show assent to an arbitration agreement."). Additionally, "neither the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties." *In re AdvancePCS Health L.P.*, 172 S.W.3d at 606 (citing 9 U.S.C. § 3).

Furthermore, under Texas law, an employee demonstrates acceptance of an agreement to arbitrate by "continuing to show up for the job and accept wages in return for work." *Kubala*, 830 F.3d at 203. Finally, mutual promises to arbitrate employment disputes constitute adequate consideration to form a binding contract. *See Goins v. Ryan's Family Steakhouses, Inc.*, 181

Fed. App'x 435, 437 (5th Cir. 2006) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (holding mutual promises to submit disputes to arbitration constituted sufficient consideration, because both parties are bound to the promises to arbitrate)).

Leach therefore manifested assent to the terms of the Agreement to Arbitrate and WIBP Arbitration Agreement when she submitted her application for employment with H.E.B., by accepting employment when offered, by completing the WIBP training, and by continuing her employment with H.E.B. after the training. The arbitration agreements at issue are valid and binding under Texas law, and Leach has not presented any evidence establishing a basis for finding the contracts unenforceable.

The Court also finds that Leach's claims fall within the scope of the relevant agreements to arbitrate. Arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Tech. v. Commc'n Workers of Am.*, 475 U.S. 643, 648–50 (1986). Where there is a broad arbitration clause, "it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). Here, Leach asserts claims of discrimination and retaliation in employment. The arbitration agreements dictate that any controversy or claim arising out of Leach's employment be resolved exclusively by final and binding arbitration. The arbitration agreements expressly cover Leach's claims.

In summary, the Court finds that the parties executed a valid and enforceable agreement to arbitrate, which cover Leach's federal claims. The Court will therefore grant H.E.B.'s motion and compel Leach to arbitrate her dispute.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration [#5] is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendant are hereby **COMPELLED** to arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant are hereby **STAYED** pending the completion of the arbitration.

**IT IS FURTHER ORDERED** that <u>Defendant</u> file a quarterly advisory regarding the status of the arbitration, with the first advisory due on **April 11, 2024**.

**IT IS FINALLY ORDERED** that Defendant provide Plaintiff with a copy of the American Arbitration Association's Employment Rules governing the ordered arbitration and how to initiate it on or before **January 19, 2024**.

SIGNED this 12th day of January, 2024.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE